# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBORAH ALBERTSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-08-197-KEW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Deborah Albertson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on September 3, 1957 and was 50 years old at the time of the ALJ's decision. She completed her high school education. Claimant's engaged in past relevant work as a riveting machine operator, furniture factory worker, packer, material handler, caregiver, and certified nurse's aide. Claimant alleges an inability to work beginning January 1, 2003 due to pain in her back, hands, and feet, asthma, hypothyroidism, obesity, bipolar disorder, and attention deficit disorder.

**Procedural History**

On September 7, 2005, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income under Title XVI of the Social Security Act (42 U.S.C. § 1381, *et seq.*). Claimant's application for benefits was denied initially and upon reconsideration. On October 5, 2007, Claimant appeared at a hearing before ALJ Lantz McClain in Sallisaw, Oklahoma. By decision dated November 21, 2007, the ALJ found Claimant was not disabled at any time through the date of the decision. On March 28, 2008, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He found Claimant retained the residual functional capacity ("RFC") to perform her past relevant work as a riveting machine operator.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error requiring reversal in (1) failing to state in his decision the weight he afforded certain medical opinions in the record; (2) improperly rejecting Claimant's

4

additional severe impairments; (3) engaging in a faulty residual functional capacity assessment; and (4) incorrectly determining Claimant could return to her past relevant work.

**Weight Given to Medical Opinions**

Claimant contends the ALJ failed to set out in his decision the weight which he gave to the opinion of Dr. Spray. In July of 2003, Claimant was being diagnosed and treated for anxiety, panic attacks and possible ADD. (Tr. 181). She was evaluated by Dr. James Buie. He complained at that time of aching, swelling, and stiffness in her hands, with a family history of arthritis and gout. (Tr. 182). Dr. Buie diagnosed Claimant with anxiety, panic, probable depression with recent severe situational stress caused by homelessness, and arthralgia. He also found Claimant had borderline thyroid enlargement. (Tr. 183). The outlook for her depression was later found to be so good that she did not have to return for treatment. (Tr. 179).

On May 13, 2004, Claimant began seeking treatment from the Carl Albert Community Mental Health Center, reporting a history of bipolar disorder and ADHD. (Tr. 167). On July 8, 2004, Claimant reported her medication, Wellbutrin, was helping but that she experienced situational depression and panic attacks two to three times per week. Claimant was diagnosed with major depression, panic disorder without agoraphobia. (Tr. 166). On September 23, 2004,

5

Claimant reported that she stopped taking the Wellbutrin because she felt she was having more panic attacks while on the medication. She stated she was experiencing hallucinations, depression, highs and lows, overeating, and mood swings. Claimant was diagnosed with bipolar disorder, mixed type, severe, panic disorder with agoraphobia. (Tr. 165).

Throughout 2005, Claimant reported problems with panic attacks and anxiety as well as thyroid problems. (Tr. 172-174). At a December 12, 2005 visit, Claimant reported she was doing well on her medication, with no episodes of depression or mania and control of her mood swings. (Tr. 161).

On October 7, 2005, Claimant underwent a consultative physical examination by Dr. Steven Nussbaum. Claimant reported chronic low back pain, difficulties standing, walking and performing household chores, right heel pain, a history of bipolar disorder and ADD. Claimant stated she shook for no reason causing difficulty writing. She described her thought processes as "slow and jerky" and had difficulty talking to people and panic in large groups. (Tr. 125). Claimant showed decreased range of motion in her back. (Tr. 128). Dr. Nussbaum diagnosed Claimant with bipolar disorder, attention deficit disorder, chronic back pain, asthma by history, hypothyroidism, tobacco abuse, and obesity. (Tr. 127).

In her medical visits in 2006, Claimant generally reported

6

control of her conditions with prescribed medication. (Tr. 221-227).

On September 10, 2007, Claimant underwent a consultative psychological evaluation with Dr. Robert Spray, a psychologist. Claimant reported that she worked as a CNA until she experienced back problems and bouts of forgetfulness. (Tr. 195). She stated she had difficulty around people, feeling they are judgmental. She described herself as a loner. She sat in a chair for hours dreading tasks such as shopping. (Tr. 196). Dr. Spray found Claimant's orientation, memory and concentration, fund of information, abstract reasoning, and judgment were appropriate. (Tr. 197). He estimated her IQ at low average. She reported panic attacks and mood swings. Claimant tested in the severe range for anxiety on the Beck Anxiety Inventory. However, Dr. Spray indicated the possibility of exaggeration. (Tr. 198). Claimant also attained a score in the severe range for depression on the Beck Depression Inventory-II. Dr. Spray found Claimant may have exaggerated results in the Personality Assessment Inventory. Based upon his testing, Dr. Spray concluded Claimant at Axis I: Bipolar disorder, NOS, by medical records, with psychotic features and anxiety disorder, NOS with possible PTSD issues. At Axis II, Personality disorder, NOS, with schizotypal, avoidant, and borderline features. (Tr. 199).

Dr. Spray completed a form entitled Residual Functional

7

Capacity Secondary to Mental Impairments, including Pain, Fatigue, and Hysterical Paralysis. He found severe restrictions in Claimant's ability to relate to co-workers, interact with supervisors, deal with work stresses, maintain regular attendance, work in coordination or proximity to others without being distracted by them, complete a normal workday, complete a normal workweek, demonstrate reliability, behave in an emotionally stable manner, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr. 200-201). Dr. Spray authored a letter dated February 8, 2008 concerning Claimant's condition. He states in a "to whom it may concern" correspondence that his conclusions were not influenced by the fact Claimant was referred by counsel and were not based upon certain testing, which he considered to be invalid. Rather, he states, his conclusions were based upon the "interview/mental status" and "drawn from the interview and medical history." (Tr. 237).

In his decision, the ALJ concluded Claimant suffered from the severe impairments of history of back pain and heel spurs, asthma, hypothyroidism, obesity, bipolar disorder and attention deficit disorder. (Tr. 15). He acknowledged the findings of Dr. Spray, but found his opinions were not entitled to controlling weight because he was not a treating physician "and his evaluation was purchased by

claimant's counsel." Despite finding this apparent bias, the ALJ cited and apparently relied upon Dr. Spray's findings that Claimant exaggerated her symptoms during testing. (Tr. 20-21).

An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. 20 C.F.R. § 404.1527(d); Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). An ALJ is also required to consider the factors set forth at 20 C.F.R. §§ 404.1527(d) and 416.927(d) in evaluating the weight given to any medical opinion.

The ALJ's stated position with regard to the opinion of Dr. Spray is internally inconsistent. The ALJ correctly determined Dr. Spray's opinions are not entitled to controlling weight because he was not a treating physician, after pasting boilerplate language of the factors contained in § 404.1527(d) into the decision. He then fails to state to what weight Dr. Spray's opinion is entitled. He finds what can only be described as some degree of bias since the evaluation was allegedly paid for by Claimant's counsel but then adopts findings by Dr. Spray that supports the ALJ's finding of non-disability while rejecting Dr. Spray's other conclusions based upon bias. On remand, the ALJ shall state the specific weight provided to Dr. Spray's opinion and re-examine the opinion based upon its medically supported content rather than the ALJ's subjective and

9

unsupported opinions of bias.

### Additional Severe Impairments

Claimant also contends the ALJ failed to consider her additional severe impairments of anxiety and personality disorder. Again, Dr. Spray's conclusions with regard to these conditions provide support for Claimant's position. When re-evaluating the weight which should be afforded Dr. Spray's opinions, the ALJ shall consider whether his findings should lead to further evaluation of her anxiety and personality disorders. Additionally, Claimant states some confusion as to the nomenclature used to refer to certain facilities' records lead to the ALJ failing to consider a part of the medical records. The ALJ should reconsider his statements made in his decision regarding the availability of the records and make such modifications to his decision as are warranted.

### RFC Assessment

Claimant's position regarding the failure of the ALJ to consider the totality of her mental impairments in his RFC assessment again relates directly to the opinions of Dr. Spray. The ALJ shall re-evaluate Claimant's RFC after considering the weight and reliability of Dr. Spray's opinions.

### Past Relevant Work

As a final argument, Claimant asserts the ALJ erroneously

10

concluded she could return to her past relevant work as a riveter without properly ascertaining the physical and mental demands of the past work. The ALJ is required to consider the actual demands of the past work and make appropriate findings of the nature of those demands in comparison with the physical and mental impairments of the claimant. <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023-1025 (10th Cir. 1996). The ALJ failed to do this in the decision. Moreover, the re-evaluation of the opinions of Dr. Spray may have some impact on Claimant's resultant impairments. On remand, the ALJ shall make the necessary specific findings as directed by <u>Winfrey</u>.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 14th day of July, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE